# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Caroline Broxson,         ) | Civil Action No. 1:14-cv-00105-JMC |
| )                            | |
| Plaintiff,    ) | |
| )                            | |
| v.                          ) | |
| )                            | **ORDER AND OPINION** |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration,    ) | |
| )                            | |
| Defendant.    ) | |
| _____ ) | |

Plaintiff Caroline Broxson ("Plaintiff") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Shiva V. Hodges, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) D.S.C. (ECF No. 16.) On December 8, 2014, the Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Id. at 35.) Plaintiff timely filed her Exceptions to the Magistrate Judge's Report and Recommendation (the "Objections"), which Objections are currently before the court. (ECF No. 19.) For the reasons set forth below, the court **ACCEPTS** the Report and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for DIB and SSI.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Magistrate Judge's Report contains a thorough recitation of the relevant factual and procedural background of this matter. (See ECF No. 16 at 1–15.) The court concludes, upon its

1

own careful review of the record, that the Report's factual and procedural summation is accurate, and the court adopts this summary as its own. The court will only reference herein background pertinent to the analysis of Plaintiff's claims.

Plaintiff was born on September 5, 1974, and is presently 41 years old. (ECF No. 11-5 at 2.) She filed applications for DIB and SSI on May 25, 2011, alleging disability since October 1, 2010, due to manic depression, bipolar disorder, anxiety, panic attack, asthma, and back pain. (Id. at 2 & 9; see also ECF No. 11-6 at 6.) Plaintiff's applications were denied initially on September 9, 2011, and upon reconsideration on February 22, 2012. (ECF No. 11-4 at 2, 12 & 14.) As a result, Plaintiff requested an administrative hearing on March 6, 2012. (Id. at 16.) On July 25, 2012, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), Ronald Sweeda, who found on August 28, 2012, that Plaintiff was not under a disability as defined by the Social Security Act ("SSA") because she "was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ECF No. 11-2 at 27 & 36.) Thereafter, the Appeals Council denied Plaintiff's request for review on November 13, 2013, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Id. at 2.)

Subsequently, on January 13, 2014, Plaintiff commenced an action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for DIB and SSI. (ECF No. 1.) On December 8, 2014, the Magistrate Judge issued her recommendation that the Commissioner's final decision denying Plaintiff's claims for DIB and SSI be affirmed. (ECF No. 16.) Plaintiff filed timely Objections to the Magistrate Judge's Report on December 24, 2014. (ECF No. 19.) The Commissioner filed a Response to Plaintiff's

Objections to the Report and Recommendation of Magistrate Judge Shiva V. Hodges on January 8, 2015.  (ECF No. 20.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Judicial Review of the Commissioner

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance."  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is

supported by substantial evidence.  See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted."  Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).  "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency."  Id.  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational."  Vitek, 438 F.2d at 1157–58.

## III.    ANALYSIS

A.    The Magistrate Judge's Review

To negate Plaintiff's claims that the ALJ neglected to consider either the combined effects of all of her impairments or the effect of thoracic kyphosis and gastroesophageal reflux disease ("GERD") on her ability to work, the Magistrate Judge provided the following review to show how the ALJ did consider the effects of Plaintiff's impairments:

> The ALJ found that Plaintiff's severe impairments included scoliosis, asthma, history of substance abuse disorder, depression, and anxiety.  Tr. at 16.  He specified that GERD, acute cholecystitis/gangrenous cholecystitis, and knee pain were non-severe impairments.  Tr. at 17. Although he did not explicitly address whether kyphosis was a severe or non-severe impairment, he addressed the impairment in the decision, indicating that Dr. Rittenberg noted chronic upper back pain secondary to exaggerated kyphosis of the thoracic spine, but that Dr. Rittenburg did not indicate any resulting limitations and that x-rays showed nothing more than mild scoliosis and mild degenerative changes.  Tr. at 20.
>
> The ALJ wrote that he had "considered the combined effects of the claimant's alleged impairments, both severe and non-severe, on the claimant's ability to work," and that "[w]hile the combination of the claimant's alleged back, neck, and knee pain may affect her ability to lift and carry, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of these impairments."  Tr. at 18–19.  He further indicated "[a]lthough her physical impairments may contribute to her affective and anxiety-related disorders, there is no evidence that the combination of the claimant's impairments imposes greater limitations than those inherent in the residual functional capacity" he assessed. Tr. at 19.  He wrote that he "considered the claimant's reports of neck and back pain in limiting the amount she can lift

4

> and carry" and that he considered potential side effects of her pain medications in "finding she cannot work at unprotected heights or around dangerous machinery." Tr. at 20–21. He indicated that he considered Plaintiff's asthma "in limiting her to light work with no exposure to temperature extremes or high humidity." Tr. at 21. He found that Plaintiff's psychiatric symptoms were relatively stable with prescribed medication and routine counseling and that she "retains the ability to perform simple, repetitive tasks." Tr. at 22. [I]n light of her anxiety and alleged panic attacks, he found that "she cannot perform any direct customer service work or work in a fast-paced production environment. Id. The ALJ noted that he "considered the claimant's history of drug and alcohol abuse and her potential for relapse in finding she cannot work at unprotected heights or around dangerous machinery." Tr. at 23 . . . .
>
> The undersigned recommends a finding that The ALJ set forth adequate reasons for determining that GERD was not a severe impairment, citing Plaintiff's lack of significant treatment for the impairment. Tr. at 16. Furthermore, neither the medical records nor Plaintiff's testimony suggest that GERD exacerbated or was exacerbated by any of Plaintiff's other impairments, which supports the ALJ's conclusion that GERD did not significantly limit Plaintiff's ability to do basic work activities. Although the ALJ neglected to explicitly cite kyphosis as a severe impairment at step two of the evaluation process, he considered kyphosis at subsequent steps in limiting Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently because of "neck and back pain." See Tr. at 20. While the ALJ did not explicitly address the combined effects of Plaintiff's thoracic kyphosis and asthma, he referenced evidence that Plaintiff had "no significant respiratory abnormalities," which addresses Plaintiff's argument that her kyphosis affected her asthma and ability to breathe. See Tr. at 21. The undersigned also notes that, aside from Plaintiff's testimony, the record does not reflect complaints of breathing difficulties other than when Plaintiff had acute respiratory illnesses. See Tr. at 39 (Plaintiff testified that curvature in back compressed lungs), 50 (Plaintiff testified that curvature in back affected her abilities to walk long distances and to pick up things from the ground), 448 (follow up from last visit for coughing, cold on January 26, 2011), 449 (coughing, cold on January 13, 2011), 458 ("sick off and on x 2 days" on May 10, 2012).

(ECF No. 16 at 21–23.) Based on the foregoing, the Magistrate Judge found that "the ALJ adequately considered the combined effects of Plaintiff's impairments" and further "provided a comprehensive and well-reasoned explanation for his conclusions regarding Plaintiff's impairments and their limiting effects and considered Plaintiff's impairments in combination." (Id. at 22 (referencing ECF No. 11-2 at 19–24).)

In addition, the Magistrate Judge concluded that substantial evidence did support the

weight the ALJ accorded to the findings and opinions of Plaintiff's treating physician, Dr. Denise Cornish-McTighe, M.D. ("Dr. Cornish-McTighe"). To reach this conclusion, the Magistrate Judge agreed with the Commissioner that a mental residual functional capacity questionnaire (ECF No. 11-8 at 40) that was signed by Dr. Cornish-McTighe was actually completed by an individual named Jeannette Coaxum. (ECF No. 16 at 24 (referencing ECF No. 13 at 15).) In this regard, the Magistrate Judge found that even though Dr. Cornish-McTighe was an acceptable medical source under Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939 (Aug. 9, 2006)[1], and 20 C.F.R. §§ 404.1513(a), 416.913(a)[2], the record did not establish that (1) "the statement Dr. Cornish-McTighe signed reflects her judgment about the nature and severity of Plaintiff's impairments"; (2) "a relationship between Plaintiff and Dr. Cornish-McTighe or the reason for her signature"; or (3) "an indication that Dr. Cornish-McTighe examined Plaintiff, reviewed Ms. Coaxum's opinion, or agreed with Ms. Coaxum's assessment." (ECF No. 16 at 27 (citations omitted).) As a result, the Magistrate Judge concluded that it was appropriate for the ALJ to ignore Dr. Cornish-McTighe's opinion. (Id. at 28.)

The Magistrate Judge next disagreed with Plaintiff's assertion that the ALJ did not give proper weight to the opinion of Dr. David R. Beckert, M.D., provided to the South Carolina

---

[1] SSR 06-03p clarifies how the Social Security Administration considers evidence from individuals who are not an "acceptable medical source," such as nurse-practitioners, physicians' assistants, chiropractors, and therapists among others. SSR 06-03p notes that "non-medical sources" that have had contact with the claimant in a professional capacity are "valuable sources of evidence for assessing impairment severity and functioning." 2006 WL 2329939, at *3. SSR 06-03p notes that non-medical opinions need to be evaluated by the relevant factors in an Administrative Decision. The case record should reflect the consideration of opinions from "'non-medical sources' who have seen the individual in their professional capacity," and the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

[2] These regulations define the "acceptable medical sources" that "can provide evidence to establish an impairment."

Department of Social Services ("SCDSS") on a DSS Form 1247 indicating that Plaintiff was disabled (see ECF No. 11-8 at 31–32). The Magistrate Judge noted the Commissioner's arguments "that Dr. Beckert's opinion was a decision on the ultimate issue of disability that was not entitled to any particular weight or deference" and he "did not cite any objective abnormalities and that there was little evidence to suggest Dr. Beckert even examined Plaintiff." (ECF No. 28 at 28 (referencing ECF No. 13 at 16).) Moreover, after reviewing the ALJ's specific comments about Dr. Becker (see ECF No. 11-2 at 25), the Magistrate Judge concluded that the little weight accorded by the ALJ to Dr. Beckert's opinion was appropriate "based on the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c)"[3] and because "there was little evidence to show Dr. Beckert examined Plaintiff and that his opinion conflicted with Plaintiff's treatment notes from Dr. Beckert's employer." (ECF No. 16 at 29–30.)

Finally, the Magistrate Judge was persuaded that substantial evidence supported the ALJ's determination that Plaintiff could perform other jobs in the national economy. To reach this finding, the Magistrate Judge first disregarded Plaintiff's contention that the description of the job of parking-lot attendant in the Dictionary of Occupational Titles ("DOT") "conflicts with the provision of the ALJ's RFC that required no direct customer service and that the . . .

---

[3] 20 C.F.R. §§ 404.1527(c) and 416.927(c) provide that, if a treating source's opinion is not accorded controlling weight, the ALJ is required to consider "all of the following factors in deciding the weight we give to any medical opinion": (1) examining relationship ("[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you"); (2) treatment relationship, including length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability ("[t]he more a medical source presents relevant evidence to support an opinion… the more weight we will give that opinion"); (4) consistency; (5) specialization; and (6) other factors. Id. "However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision.'" Kirby v. Colvin, No. 4:13-cv-3138-DCN, 2015 WL 1038036, at *3 (D.S.C. Mar. 10, 2015) (quoting Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010)); see 20 C.F.R. § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion).

[vocational expert] erroneously testified that his testimony was consistent with the DOT." (ECF No. 16 at 30–34 (referencing ECF No. 12 at 9–10).) Thereafter, the Magistrate Judge reviewed the record and found support for the ALJ's determination that Plaintiff could perform other jobs in the economy while Plaintiff failed to meet "her burden to prove that she [wa]s unable to perform other work." (Id. at 34.)

Based upon the foregoing, the Magistrate Judge recommended that the court affirm the Commissioner because her decision was "supported as a matter of fact and law." (Id. at 35.)

B.    Plaintiff's Objections and the Commissioner's Response

Objections to the magistrate judge's report and recommendation must be specific. See U.S. v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984) (failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge); see also Camby, 718 F.2d at 199 (in the absence of specific objections to the report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation).

As to her first objection to the Report, Plaintiff took exception to any negative inference resulting from the allegation that Dr. David Becker's opinion regarding Plaintiff was rendered in response to a checklist provided by Plaintiff's attorney. (ECF No. 19 at 1.) In this regard, Plaintiff asserted that "Dr. Becker's opinion was given in response to a request from the South Carolina Department of Social Services – not from the Plaintiff or her attorney" and the Magistrate Judge should have, but did not, address the ALJ's "unfavorable comment discrediting a physician's opinions because they were supposedly placed on a 'checklist' furnished by Plaintiff's attorney." (Id.)

Plaintiff next took exception to the ALJ's decision "to not consider material and relevant

evidence from Plaintiff's treating psychiatrist but to consider it as evidence from a non-medical source."  (Id. at 2.)   Plaintiff asserted that she was prejudiced by the ALJ's treatment of her treating psychiatrist (Dr. Cornish-McTighe) and mental health caseworker (Jeannette Coaxum). (Id. at 4.)

In her third objection, Plaintiff asserted that the ALJ failed to consider "the combined effect of all of her impairments, both severe and non-severe" and only "discussed [her] physical or mental impairment[s]."  (Id. at 2.)

Finally, although she agreed that the ALJ can rely on the testimony of a vocational expert, Plaintiff questioned the appropriateness of the vocational expert's opinion that Plaintiff can perform as a parking lot attendant which would put her in close contact with members of the general public.  (See ECF No. 11-2 at 27)

In response to Plaintiff's Objections, the Commissioner asserted that Plaintiff's arguments are meritless, simply "reargue the issues raised by Plaintiff in her brief, i.e., that the ALJ erred in weighing the medical opinion evidence[,]" and do not identify "any errors in Magistrate Judge Hodges' thorough and well-reasoned Report and Recommendation."  (ECF No. 20 at 1.)

C.     The Court's Ruling

Upon review of the Report, the court finds that the Magistrate Judge performed a thorough analysis of the record.  In this regard, the court agrees with the Magistrate Judge that the ALJ's decision complies with the regulatory scheme and gives the proper weight, treatment, and consideration to the evidence in this case.  In her Objections, Plaintiff merely rehashes arguments that were properly considered and rejected by the Magistrate Judge.  (Compare ECF No. 12 at 5–11 and ECF No. 19 at 1–3.)  Therefore, the court overrules Plaintiff's Objections

because they do not suggest any new arguments that would cause the court to reject the Magistrate Judge's analysis and recommendation.  Felton v. Colvin, C/A No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014) ("The Court may reject perfunctory or rehashed objections to R & R's that amount to 'a second opportunity to present the arguments already considered by the Magistrate–Judge.'") (quoting Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D.P.R. 2005)).  The court further concludes in agreement with the Magistrate Judge that substantial evidence supports the decision of the Commissioner that Plaintiff was not disabled within the meaning of the SSA during the relevant time period.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income.  The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 16) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 28, 2015
Columbia, South Carolina